

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | No. **1:21-cr-00065** |
| | ) | |
| v. | ) | Violation: Title 18, United States Code, Section 1343 |
| | ) | |
| CASPER ZORRILLA | ) | |

<u>UNDER SEAL</u> **Judge Gary Feinerman
Magistrate Judge Heather K. McShain**

The SPECIAL JANUARY 2020 GRAND JURY charges:

1. At times material to this Indictment:

    a. Defendant CASPER ZORRILLA held himself out as being a self-employed online trader, who traded in the stock market, commodity futures contracts, foreign exchange contracts, and crypto currency contracts.

    b. ZORRILLA owned a company known as H&Z, LLC, which he identified as being an investment trading business, located at his home address in Reading, Pennsylvania.

    c. ZORRILLA had two trading accounts on two electronic trading platforms. ZORRILLA deposited a total of less than $5,000 into those trading accounts.

    d. ZORRILLA solicited and obtained money from individuals who provided their funds to ZORRILLA to be invested by him on their behalf (referred to as "victims"), including victims located in the Northern District of Illinois. ZORRILLA deposited victim funds, or caused victim funds to be deposited, into his personal and business bank accounts. ZORRILLA used a payroll services company to make payments to investors, which ZORRILLA represented were returns on investments.

2. Beginning in or about no later than September 2017, and continuing until in or about November 2020, in the Northern District of Illinois, Eastern Division, and elsewhere,

CASPER ZORRILLA,

defendant herein, devised, intended to devise, and participated in a scheme to defraud, and to obtain money and property based on materially false and fraudulent pretenses, representations, and promises, which scheme is further described below.

3. It was part of the scheme that ZORRILLA knowingly made materially false representations, and caused others to make false representations, to victims in order to fraudulently obtain and retain the victims' funds. This included false representations concerning: (a) the safety of investing funds with him; (b) the expected and actual returns on those investments; and (c) the ways in which those funds would be used and were used. Instead of using victim funds as promised, ZORRILLA misappropriated a substantial portion of those funds to pay for his own personal and business expenses, and to make payments to more than approximately a dozen victims, causing losses of at least approximately $350,000.

4. It was further part of the scheme that ZORRILLA falsely represented, and caused others to falsely represent, to victims that he was a very successful online trader, and that he would earn money for victims based on his highly profitable trading. ZORRILLA falsely represented to victims that he would, and did, trade all of their funds on their behalf, and he guaranteed that his trading would generate large returns for the

victims. In fact, ZORRILLA knew that he did not intend to invest the victims' funds as promised, and that the victims' funds would not, and did not, generate large returns.

5. It was further part of the scheme that ZORRILLA falsely represented, and caused others to falsely represent, that he would, and did, invest victims' funds in the stock market, and in various securities, options contracts and commodity futures contracts, including contracts based upon crypto currencies and foreign currencies, and that he would pool investors' funds to make those investments. Contrary to his representations, instead of trading victims' funds, ZORRILLA intended to, and did, use a substantial portion of those funds to pay for personal and business expenses and to make payments to the victims.

6. It was further part of the scheme that ZORRILLA falsely represented, and caused others to falsely represent, to certain victims that there was no risk involved with the investments, and their funds would always be safe. ZORRILLA also falsely represented that victims would not lose any of the money that they invested, and they could withdraw their money at any time, with approximately two-weeks' notice. In fact, ZORRILLA knew that victims' funds were not safe, because he intended to and did misappropriate a substantial portion of the victims' funds.

7. It was further part of the scheme that ZORRILLA made payments to victims, falsely representing, and causing others to falsely represent, that those payments were investment returns generated by ZORRILLA's successful trading. By making those payments, ZORRILLA convinced people to invest money with him and to keep their investment funds with him because it falsely appeared that he was generating and paying substantial returns. Contrary to his representations, ZORRILLA knew that he was using

3

victims' funds to make those payments, and that those funds were not generated through investments as promised.

8. It was further part of the scheme that ZORRILLA intentionally failed to provide written investment materials to many of the victims, such as contracts, account statements, or transaction summaries, thereby avoiding a paper trail showing the false representations that ZORRILLA made to victims concerning the use of their funds. Even when certain victims requested documentation, and ZORRILLA promised to provide documents, ZORRILLA did not provide those written investment materials.

9. It was further part of the scheme that, instead of using victims' funds in the manner he described to victims, ZORRILLA misappropriated a substantial portion of the victims' funds to pay for his own personal and business expenses, such as travel expenses, car payments, utility bills, restaurant charges, airline tickets, hotels, and retail purchases, and to make payments to other investors, as well as to pay individuals to recruit new investors.

10. It was further part of the scheme that after ZORRILLA stopped making payments to victims, ZORRILLA provided a variety of false excuses as to why he stopped making payments and why he could not repay the victims, including that the Internal Revenue Service and the banks had frozen his accounts, and that his online trading platform would not release the funds. In fact, ZORRILLA knew that he could not make payments to the victims because he had misappropriated a substantial portion of the victims' funds, instead of investing those funds as promised.

4

11. It was further part of the scheme that ZORRILLA knowingly made false lulling statements to victims about paying them back, which included falsely promising that he would return their funds in the near future, and that they would get all of their money back. Eventually, ZORRILLA deliberately cut off contact with most of the victims in order to avoid repaying them.

12. It was further part of the scheme that ZORRILLA misrepresented, concealed, and hid, and caused to be misrepresented, concealed, and hidden, the existence of the scheme, the purposes of the scheme, and acts done in furtherance of the scheme.

13. As a result of the scheme, ZORRILLA caused losses to more than approximately a dozen victims totaling at least approximately $350,000.

14. On or about November 22, 2017, in the Northern District of Illinois, Eastern Division, and elsewhere,

CASPER ZORRILLA,

defendant herein, for the purpose of executing the scheme to defraud, knowingly caused to be transmitted in interstate commerce, by means of wire communication, certain writings, signs, and signals, namely, an interstate wire transmission relating to a check from Victim A, in the amount of $4,000, that was deposited into ZORRILLA's personal bank account at a branch of Wells Fargo Bank, in Westchester, Illinois, and electronically cleared via a wire transmission to a location outside of Illinois for processing, which funds were to be used for trading;

In violation of Title 18, United States Code, Section 1343.

## COUNT TWO

The SPECIAL JANUARY 2020 GRAND JURY further charges:

1. Paragraphs 1 through 13 of Count One of this Indictment are incorporated here.

2. On or about December 13, 2017, in the Northern District of Illinois, Eastern Division, and elsewhere,

CASPER ZORRILLA,

defendant herein, for the purpose of executing the scheme to defraud, knowingly caused to be transmitted in interstate commerce, by means of wire communication, certain writings, signs, and signals, namely, an interstate wire transmission relating to a check from Victim B, in the amount of $20,000, that was deposited into ZORRILLA's personal bank account at a branch of Wells Fargo Bank, in Westchester, Illinois, and electronically cleared via a wire transmission to a location outside of Illinois for processing, which funds were to be used for trading;

In violation of Title 18, United States Code, Section 1343.

## COUNT THREE

The SPECIAL JANUARY 2020 GRAND JURY further charges:

1. Paragraphs 1 through 13 of Count One of this Indictment are incorporated here.

2. On or about February 16, 2018, in the Northern District of Illinois, Eastern Division, and elsewhere,

CASPER ZORRILLA,

defendant herein, for the purpose of executing the scheme to defraud, knowingly caused to be transmitted in interstate commerce, by means of wire communication, certain writings, signs, and signals, namely, an interstate wire transmission relating to a check from Victim B, in the amount of $30,000, that was deposited into ZORRILLA's personal bank account at a branch of Wells Fargo Bank, in Westchester, Illinois, and electronically cleared via a wire transmission to a location outside of Illinois for processing, which funds were to be used for trading;

In violation of Title 18, United States Code, Section 1343.

## COUNT FOUR

The SPECIAL JANUARY 2020 GRAND JURY further charges:

1. Paragraphs 1 through 13 of Count One of this Indictment are incorporated here.

2. On or about May 30, 2018, in the Northern District of Illinois, Eastern Division, and elsewhere,

CASPER ZORRILLA,

defendant herein, for the purpose of executing the scheme to defraud, knowingly caused to be transmitted in interstate commerce, by means of wire communication, certain writings, signs, and signals, namely, an interstate wire transmission relating to a check from Victim C, in the amount of $20,000, that was deposited into ZORRILLA's business bank account at a branch of Bank of America, in Chicago, Illinois, and electronically cleared via a wire transmission to a location outside of Illinois for processing, which funds were to be used for trading;

In violation of Title 18, United States Code, Section 1343.

## COUNT FIVE

The SPECIAL JANUARY 2020 GRAND JURY further charges:

1. Paragraphs 1 through 13 of Count One of this Indictment are incorporated here.

2. On or about June 19, 2018, in the Northern District of Illinois, Eastern Division, and elsewhere,

CASPER ZORRILLA,

defendant herein, for the purpose of executing the scheme to defraud, knowingly caused to be transmitted in interstate commerce, by means of wire communication, certain writings, signs, and signals, namely, an interstate wire transmission relating to a check from Victim A, in the amount of $5,000, that was deposited into ZORRILLA's business bank account at a branch of Bank of America, in Joliet, Illinois, and electronically cleared via a wire transmission to a location outside of Illinois for processing, which funds were to be used for trading;

In violation of Title 18, United States Code, Section 1343.

## COUNT SIX

The SPECIAL JANUARY 2020 GRAND JURY further charges:

1. Paragraphs 1 through 13 of Count One of this Indictment are incorporated here.

2. On or about June 26, 2018, in the Northern District of Illinois, Eastern Division, and elsewhere,

CASPER ZORRILLA,

defendant herein, for the purpose of executing the scheme to defraud, knowingly caused to be transmitted in interstate commerce, by means of wire communication, certain writings, signs, and signals, namely, an interstate wire transmission relating to a check from Victim B, in the amount of $14,000, that was deposited into ZORRILLA's business bank account at a branch of Bank of America, in Berwyn, Illinois, and electronically cleared via a wire transmission to a location outside of Illinois for processing, which funds were to be used for trading;

In violation of Title 18, United States Code, Section 1343.

## COUNT SEVEN

The SPECIAL JANUARY 2020 GRAND JURY further charges:

1. Paragraphs 1 through 13 of Count One of this Indictment are incorporated here.

2. On or about July 3, 2018, in the Northern District of Illinois, Eastern Division, and elsewhere,

CASPER ZORRILLA,

defendant herein, for the purpose of executing the scheme to defraud, knowingly caused to be transmitted in interstate commerce, by means of wire communication, certain writings, signs, and signals, namely, an interstate wire transmission relating to a check from Victim D, in the amount of $20,000, that was deposited into ZORRILLA's business bank account at a branch of Bank of America, in Berwyn, Illinois, and electronically cleared via a wire transmission to a location outside of Illinois for processing, which funds were to be used for trading;

In violation of Title 18, United States Code, Section 1343.

## COUNT EIGHT

The SPECIAL JANUARY 2020 GRAND JURY further charges:

1. Paragraphs 1 through 13 of Count One of this Indictment are incorporated here.

2. On or about July 17, 2018, in the Northern District of Illinois, Eastern Division, and elsewhere,

CASPER ZORRILLA,

defendant herein, for the purpose of executing the scheme to defraud, knowingly caused to be transmitted in interstate commerce, by means of wire communication, certain writings, signs, and signals, namely, an interstate wire transmission relating to a check from Victim D, in the amount of $12,000, that was deposited into ZORRILLA's business bank account at a branch of Bank of America, in Berwyn, Illinois, and electronically cleared via a wire transmission to a location outside of Illinois for processing, which funds were to be used for trading;

In violation of Title 18, United States Code, Section 1343.

## COUNT NINE

The SPECIAL JANUARY 2020 GRAND JURY further charges:

1. Paragraphs 1 through 13 of Count One of this Indictment are incorporated here.

2. On or about July 31, 2018, in the Northern District of Illinois, Eastern Division, and elsewhere,

### CASPER ZORRILLA,

defendant herein, for the purpose of executing the scheme to defraud, did knowingly cause to be transmitted in interstate commerce, by means of wire communication, certain writings, signs, and signals, namely: an interstate transfer of funds, relating to a payment in the amount of $312, to Victim E, who lived in the Northern District of Illinois, sent on behalf of ZORRILLA, from Bank of America, New York, New York and transferred through the Federal Reserve's Automated Clearing House (ACH) system, which was paid to Victim E as a return on his investment;

In violation of Title 18, United States Code, Section 1343.

## COUNT TEN

The SPECIAL JANUARY 2020 GRAND JURY further charges:

1. Paragraphs 1 through 13 of Count One of this Indictment are incorporated here.

2. On or about July 31, 2018, in the Northern District of Illinois, Eastern Division, and elsewhere,

CASPER ZORRILLA,

defendant herein, for the purpose of executing the scheme to defraud, did knowingly cause to be transmitted in interstate commerce, by means of wire communication, certain writings, signs, and signals, namely: an interstate transfer of funds, relating to a payment in the amount of $636.30, to Victim F, who lived in the Northern District of Illinois, sent on behalf of ZORRILLA, from Bank of America, New York, New York and transferred through the Federal Reserve's Automated Clearing House (ACH) system, which was paid to Victim F as a return on his investment;

In violation of Title 18, United States Code, Section 1343.

A TRUE BILL:

_____
FOREPERSON

_____
UNITED STATES ATTORNEY